USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___7/10/2023___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KYLE SENEAR,

                                    Plaintiff,

                    -against-

C.O. MININNI; C.O. BROGAN; C.O.
JOHN DOE,

                                    Defendants.

21-cv-11131 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Kyle Senear ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, commenced this action on December 27, 2021 pursuant to 42 U.S.C. § 1983, alleging violations of the Eighth Amendment as well as common law claims for negligence against Defendants Mininni, Brogan, and John Doe, who are corrections officers for the New York State Department of Corrections and Community Supervision ("DOCCS"). (*See* Complaint ("Compl."), ECF No. 2 at 1.) Presently before this Court is Defendants' motion to dismiss Plaintiff's Complaint pursuant to the Federal Rules of Civil Procedure Rule 12(b)(6). (ECF No. 21.) For the reasons set forth below, Defendants' motion is GRANTED and Plaintiff's claims are dismissed without prejudice.

## BACKGROUND

### I.      Factual Background

The following facts are taken from Plaintiff's Complaint and are assumed to be true for the purposes of this motion. The events of this litigation arise out of Plaintiff's incarceration at the Green Haven Correctional Facility ("Green Haven").

On August 9, 2021, Plaintiff exited his cell for dinner. (Compl. at ¶¶ 2–3.) Upon exiting his cell, he noticed another inmate nearby who he had previously had an altercation with. (*Id.* at ¶

1

3.) As a result, he asked Defendant Doe to let him return to his cell, but Defendant Doe refused his request. (*Id.* at ¶ 4.) Plaintiff then informed Defendant Mininni that the other inmate had previously instigated a fight with Plaintiff, and both Defendants Mininni and Doe began laughing and ordered Plaintiff to go to dinner. (*Id.* at ¶ 5.) As Plaintiff turned to go to dinner, the other inmate attacked Plaintiff with a "small handled broom," hitting Plaintiff several times while Defendants Doe and Brogan stood nearby and watched. (*Id.* at ¶ 6.) After "several minutes," Defendants Brogan and Mininni ordered the attacking inmate to stop. (*Id.* at ¶ 7.)

As a result of the assault, Plaintiff suffered head trauma, receiving "staples to the head, 2 of them." (*Id.* at ¶ II, 9.) Plaintiff states that he attempted to exhaust his remedies on multiple occasions but that "none of [his] grievances were answered or filed." (*Id.* at ¶ IV.) Further, he alleges that he "tried to appeal the unanswered grievances to the superintendent, [but] he never responded." (*Id.*)

## II.      Procedural Background

On December 27, 2021, *pro se* Plaintiff filed his Complaint alleging Defendants violated the Eighth Amendment when they failed to protect him from the assault of another inmate. (*See generally* Compl.) Plaintiff also brings state law claims for negligence. (*Id.*) Defendants were granted leave to file a motion to dismiss by order dated July 1, 2022 (ECF No. 20), and Defendants filed their motion on October 13, 2022 (ECF No. 21). Plaintiff did not file an opposition.

## STANDARD OF REVIEW

## I.      Rule 12(b)(6)

Under Federal Rule of Civil Procedure Rule 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

Where a motion to dismiss is unopposed, a court should nevertheless "assume the truth of a pleading's factual allegations and test only its legal sufficiency." *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000). While the Court must take all material fact allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Where a *pro se* plaintiff is concerned, the Court is obliged to construe *pro se* pleadings liberally, particularly when they allege civil rights violations. *See McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). Further, courts must interpret a *pro se* plaintiff's pleadings "to raise the strongest arguments that they suggest." *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (internal citation omitted). Nevertheless, a *pro se* plaintiff's pleadings must satisfy the plausibility standards in *Iqbal* and *Twombly*. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

## II.    Section 1983

Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, usage, of any State … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09-CV-5446 (SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013) (citing *Giordano v. City of N.Y.*, 274 F.3d 740, 750 (2d Cir. 2001)). Moreover, Plaintiff must allege facts showing Defendant's direct and personal involvement in the alleged constitutional deprivations. *See Spavone v. N.Y. Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013).

## DISCUSSION

### I.     Prison Litigation Reform Act ("PLRA")

The PLRA instructs that "[n]o action shall be brought with respect to prison conditions under section 1983 … or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a). The Supreme Court and the Second Circuit have long held that the PLRA establishes a mandatory exhaustion regime that forecloses judicial discretion over an unexhausted claim. *See Ross v. Blake*, 578 U.S. 632, 641 (2016); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir.

2011) ("Exhaustion is mandatory—unexhausted claims may not be pursued in federal court."). Further, the Supreme Court has construed Section 1997(e)(a) to require "proper exhaustion," which is attained only when an inmate appeals to the highest procedure level possible and receives a final decision regarding their grievance. *See Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Torres v. Carry*, 672 F. Supp. 2d 338, 344 (S.D.N.Y. 2009) (declining to find exhaustion where plaintiff had not "fully exhausted" his administrative remedies because there was "no evidence that a final decision" was "rendered" on plaintiff's administrative appeal).

To fully exhaust one's claims, a plaintiff who is incarcerated in New York State custody must exhaust a claim by adhering to the DOCCS Inmate Grievance Program ("IGP"). IGP requires prisoners to complete a three-step inmate grievance procedure, including two levels of appeals, to fully exhaust administrative remedies. *See Williams v. Correction Officer Priatno*, 829 F.3d 118, 119–120 (2d Cir. 2016); *see also* 7 N.Y. Comp. Codes R. & Regs. ("NYCRR") §§ 701.5(b)–(c) (outlining three-step grievance procedure). To properly initiate a grievance, an inmate must file their complaint "within 21 calendar days" of the alleged incident. 7 NYCRR § 701.5(a)(1). To properly exhaust a grievance, an inmate must (1) "file[] a grievance with the Inmate Grievance Resolution Committee ('IGRC')," (2) "appeal an adverse decision by the IGRC to the superintendent of the facility," and (3) "appeal an adverse decision by the superintendent to the [Central Office Review Committee ('CORC')]." *See McGee v. McGready*, No. 16-CV-4187 (NSR), 2018 WL 2045094, at *2 (S.D.N.Y. Apr. 30, 2018) (citing 7 NYCRR § 701.5). "[T]he final step in the grievance procedure always remains the appeal to CORC. Thus, only after CORC has reviewed the appeal and rendered a decision are New York's grievance procedures exhausted." *Gardner v. Daddezio*, No. 07-CV-7201 (SAS), 2008 WL 4826025, at *2 (S.D.N.Y. Nov. 5, 2008) (footnote omitted).

Non-exhaustion is an affirmative defense, not a pleading requirement; thus, incarcerated plaintiffs need not plead exhaustion with particularity. *See McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003) (citing *Jenkins v. Haubert*, 179 F.3d 19, 28–29 (2d Cir. 1999)). Instead, a defendant bears the burden of proof in demonstrating non-exhaustion. *Colon v. N.Y.S. Dep't of Corr. & Cmty. Supervision*, No. 15-CV-7432 (NSR), 2017 WL 4157372, at *4 (S.D.N.Y. Sept. 15, 2017) (citing *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009)). Dismissal on a Rule 12(b)(6) motion for failure to exhaust is appropriate when non-exhaustion is clear from the face of the complaint. *See Williams*, 829 F.3d at 122. On such a motion, a court is confined to the four corners of the complaint, the documents attached thereto, and sources of which it is entitled to take judicial notice. *See McGready*, 2019 WL 6341290, at *2 (citing *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013) and *Gonzalez v. Hasty*, 651 F.3d 318, 321 (2d Cir. 2011)). There are, however, limited circumstances in which extrinsic evidence of exhaustion may be considered by courts: "(1) the standard *pro se* complaint form has a checked box regarding exhaustion; (2) the allegations in the complaint clearly state that the inmate exhausted administrative remedies; or (3) the complaint clearly establishes that the inmate had, in fact, not exhausted administrative remedies." *Murray v. Orange County*, No. 18-CV-0442 (NSR), 2020 WL 3450782, at *3 (S.D.N.Y. June 23, 2020).

Here, Plaintiff affirmatively states in his complaint that he "exhausted all administrative remedies." (Compl. at ¶ IV.) Because Plaintiff clearly alleges that he attempted to exhaust his administrative remedies, the Court may consider extrinsic evidence of exhaustion. *See, e.g., Murray*, 2020 WL 3450782, at *3. Additionally, because the exhaustion issue is an integral part of the Plaintiff's claim, the Court may refer to materials outside of the complaint to determine

whether Plaintiff has, in fact, exhausted his administrative remedies.[1] *See McGready*, 2018 WL 2045094, at *4.

Plaintiff failed to fully exhaust his administrative remedies through the IGP program. Plaintiff contends that he "attempted to exhaust [his] remedies on multiple occasion's (sic) [but] none of [his] grievances were answered or filed," and that he subsequently "tried to appeal the unanswered grievances to the superintendent, [and the superintendent] never responded." (Compl. at ¶ IV.) Defendants, however, argue that Plaintiff failed to exhaust his administrative remedies prior to bringing this action. (Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defs. Mem."), ECF No. 22 at 8–11.) More specifically, Defendants claim that Plaintiff failed to pursue available administrative remedies because Plaintiff did not file a grievance pertaining to the alleged incident, nor did he subsequently appeal any related grievance to CORC. (*Id.* at 10.)

In support of their motion, Defendants offer evidence that Plaintiff failed to file a grievance concerning allegations of the Defendants' failure to protect him from the attack of another inmate. (*See* Declaration of Laura Stanaway ("Stanaway Decl."), ECF No. 25 at ¶¶ 18–19; *see also* Declaration of Rachel Seguin ("Seguin Decl."), ECF No. 24 at ¶¶ 5–6; Declaration of Chris Tapia ("Tapia Decl."), ECF No. 26 at ¶¶ 9–10.) Green Haven IGP Supervisor Laura Stanaway reviewed the records at Green Haven and found that Plaintiff did not file a grievance related to an August 9, 2021 attack. (Stanaway Decl. at ¶¶ 1, 18.) Plaintiff was transferred from Green Haven to Midstate Correctional Facility ("Midstate") in November 2021. Chris Tapia, the IGP Supervisor at Midstate, likewise found no grievances related to the August 9, 2021 incident. (Tapia Decl. at ¶¶ 1, 9.) Tapia

---

[1] Generally, when a court considers material extrinsic to a complaint on a Rule 12(b)(6) motion, the potential harm to the plaintiff "is the lack of notice that the material may be considered." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–153 (2d Cir. 2002). Here, however, the same risk of harm to Plaintiff does not exist where he was informed of Defendants' intent to introduce extrinsic evidence and had an opportunity to respond. (*See* Local Rule 12.1 Notice, ECF No. 23.) Thus, this Court's consideration of extrinsic evidence presented by Defendants does not prejudice Plaintiff.

attests that his review of Midstate's grievance records reveals that Plaintiff fully exhausted four grievances while at Midstate, but that none of those grievances pertain to the incident at issue here. (*Id.* ¶ at 9.) Defendants have thus offered unrebutted evidence that Plaintiff failed to file a grievance within 21 days of the alleged incident as was required to fully exhaust his administrative remedies. *See* 7 NYCRR § 701.5(a)(1).

Further, the regulations require an inmate to "appeal a grievance 'to the next step' if he does not receive a timely response." *See Williams*, 829 F.3d at 124 (quoting 7 NYCRR § 701.6(g)(1)(ii)(2)). Although no evidence exists to suggest Plaintiff filed a grievance related to the incident at issue, Plaintiff alleges "none of [his] grievances were answered or filed." (Compl. at ¶ IV.) If true, Plaintiff was then obligated to file an appeal to the superintendent. *See* 7 NYCRR § 701.5(c). Plaintiff alleges that he "tried to appeal the unanswered grievances to the superintendent, [but] he never responded." (Compl. at ¶ IV.) Stanaway and Tapia, however, attested that neither could find a copy of Plaintiff's purported appeal. (Stanaway Decl. at ¶ 19; Tapia Decl. at ¶ 10.) In addition, DOCCS IGP Director Rachel Seguin, who oversees all appeals received by CORC (the third and final level of IGP administrative review), attested that Plaintiff did not appeal any case related to the incident at issue. (Seguin Decl. at ¶¶ 1–2, 6.) Accordingly, even assuming that Plaintiff did file a grievance at either Green Haven or Midstate, Defendants has offered unrebutted evidence that Plaintiff failed to fully exhaust his administrative remedies. Accordingly, Defendants have met their burden in showing that Plaintiff failed to fully exhaust his administrative remedies.

Next, the Court must consider whether there is any basis for excusing Plaintiff's failure to exhaust his administrative remedies. The Supreme Court recently clarified that an inmate's failure to exhaust his administrative remedies may only be excused where the remedies, "although officially on the books," were "unavailable" to him because it was "not capable of use to obtain

relief." *Ross*, 578 U.S. at 643. This exception to the PLRA's exhaustion requirement applies in three circumstances: (1) when the administrative remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44.

Plaintiff's case does not fall into one of these exceptions. First, Plaintiff does not allege or present evidence that "officers [are] unable to or consistently unwilling to provide any relief to aggrieved inmates" such that the administrative grievance procedure "operates as a dead end." *Id.* at 643. In other words, Plaintiff does not show that the prison's administrative process precludes the "possibility of some relief" or that "no such potential exists." *Id.* Even if a "plaintiff's initial grievance received no response," as Plaintiff alleges here (Compl. at ¶ IV), "this alone is insufficient to show that the [IGP] acted as a mere dead end." *Mena v. City of New York,* No. 13-CV-2430 (RJS), 2016 WL 3948100, at *4 (finding no exhaustion—even where corrections department did not address inmate's grievance—because regulations provided a "built-in appeal mechanism" "whereby inmates may directly proceed to the next level of review" in the event of unresponsiveness). "[T]he law is well-settled that an inmate's failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies." *Id.* (internal citations and quotations omitted); *see also Taylor v. N.Y.C. Dep't of Corr.*, 849 F. App'x 5, 9 (2d Cir. 2021) (finding that plaintiff's "failure to appeal the non-responses to these grievances constituted a failure to exhaust his administrative remedies."). No evidence exists here to rebut Defendants' sworn declarations that Plaintiff never filed a grievance or an appeal. (*See* Stanaway Decl. at ¶¶ 18-19; Seguin Decl. at ¶¶

9

5-6; Tapia Decl. at ¶¶ 9-10.) Accordingly, IGP's alleged untimeliness in responding to Plaintiff's grievances does not demonstrate that administrative remedies were unavailable to Plaintiff.

Second, Plaintiff does not allege or present evidence that the administrative grievance procedure is "so opaque that it becomes, practically speaking, incapable of use." *Ross*, 578 U.S. at 643. To that end, Plaintiff alleges that his grievances were never filed. (Compl. at ¶ IV.) No evidence exists, however, to suggest Plaintiff faced "extraordinary circumstances" that the regulations did not address. *Cf. Williams*, 829 F.3d at 124 (finding grievance procedure was "so opaque" as to become "incapable of use" where regulations did not provide appeal procedure for plaintiff who was housed in a special housing unit and thus relied upon a corrections officer who failed to submit a grievance on plaintiff's behalf). For example, Plaintiff does not allege that he was forced to rely upon a corrections officer who then failed to submit a grievance on his behalf. *Cf. Williams*, 829 F.3d at 124. To the contrary, Plaintiff has successfully navigated the administrative grievance process on multiple occasions, filing and appealing three different grievances. (*See* Seguin Decl. Ex. A; Tapia Decl. at ¶ 9). No evidence exists here to suggest Plaintiff even *attempted* to file a grievance, and as such, Plaintiff cannot argue the administrative process—one which Plaintiff has used on three occasions—proved "incapable of use," *Ross*, 578 U.S. at 643. *See Miller v. Annucci*, No. 17-CV-4698 (KMK), 2021 WL 4392305, at *14 (S.D.N.Y. Sept. 24, 2021) ("Because there is no evidence that Plaintiff even attempted to file a grievance, the exception under *Williams*—for grievance processes that provide no guidance on what to do when a grievance is submitted but not filed—does not apply.").

Third, Plaintiff does not allege or present evidence that the administrative remedy process was unavailable to Plaintiff through "machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644. Although Plaintiff alleges that his grievances were never "answered or filed," Plaintiff

does not allege he was prevented from filing a grievance or an appeal. *See Haywood v. Palmer*, No. 21-CV-7277 (NSR), 2023 WL 2711555, at *5 (S.D.N.Y. Mar. 30, 2023) (collecting cases).

Accordingly, Plaintiff has failed to exhaust his administrative remedies, and as a result, his federal claims must be dismissed.

## II.    Remaining State Law Claims

"[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). With the dismissal of Plaintiff's Section 1983 claims against all Defendants, there remains no independent jurisdictional basis for his remaining state law claims. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."). In addition, where the federal claims are dismissed at an early stage in the litigation, the Second Circuit has generally held that it is inappropriate for the district court to exercise supplemental jurisdiction. *See, e.g., Giordano v. City of New York*, 274 F.3d 740, 754–55 (2d Cir. 2001); *Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir. 1998); *Castellano v. Bd. of Trs. of Police Officers' Variable Supplements Fund*, 937 F.2d 752, 758 (2d Cir. 1991).

Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims against Defendants.[2]

---

[2] Moreover, Plaintiff's claims are precluded by Correction Law § 24. The Second Circuit has long-held that Correction Law § 24 precludes a plaintiff from raising state law claims in federal court against state officers in their personal capacities for alleged actions arising within the scope of their employment. *See Baker v. Coughlin*, 77 F.3d 12, 16 (2d Cir. 1996). Instead, Plaintiff can only bring such claims in New York's Court of Claims. *See* Correction Law § 24(2).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

Because this Court dismisses Plaintiff's claims for failure to exhaust, Plaintiff's claims are dismissed without prejudice. *See Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002) ("[T]he dismissal of claims for failure to exhaust should be without prejudice."). Plaintiff's remedy is to commence a new action consistent with this order upon exhaustion of his claims.

In the alternative, Plaintiff is granted leave to file an Amended Complaint asserting sufficient facts to support an exception to the exhaustion requirement.  Plaintiff may file an Amended Complaint on or before August 24, 2023, should he choose to reassert claims that were dismissed without prejudice. Because Plaintiff's Amended Complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to remain must be included in the amended complaint. An Amended Civil Rights Complaint form is attached to this Opinion. If Plaintiff elects to file an Amended Complaint, Defendants shall answer or otherwise seek leave to move in response to Plaintiff's Amended Complaint on or before September 14, 2023.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 21.

The Clerk of Court is further directed to mail a copy of this Opinion & Order to *pro se* Plaintiff at his address listed on ECF and to show service on the docket.

 SO ORDERED.


Dated:     July 10, 2023
              White Plains, New York

_____
              NELSON S. ROMÁN
              United States District Judge

12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.


-against-

_____

_____

_____

_____

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

_____CV_____

(Include case number if one has been
assigned)

**AMENDED
COMPLAINT**

(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

---

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name                    Middle Initial                Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City                              State                    Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

## IV.   DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name                  Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State               Zip Code

Defendant 2:

First Name                  Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State               Zip Code

Defendant 3:

First Name                  Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State               Zip Code

Defendant 4:

First Name                  Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State               Zip Code

Page 3

## V.      STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____

Page 6